UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:18-CV-00016-TBR

ASHLEY GOODWIN, PLAINTIFF

v.

HUHTAMAKI, INC., *et. al.*, DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Huhtamaki, Inc.'s motion to dismiss and for fees and costs, [DN 20.] After the filing of Defendant's motion, Plaintiff Ashley Goodwin voluntarily dismissed her claims against all Defendants, [DN 23.] Therefore, the motion to dismiss portion of Defendant's motion is now moot. However, Defendant still wishes to pursue the portion of its motion seeking attorney's fees, costs, and sanctions. Accordingly, Plaintiff filed a response in opposition to that portion of Defendant's motion, [DN 26], and Defendant filed a reply in support, [DN 29.] Fully briefed, this matter is now ripe for adjudication. For the reasons explained in detail below, Defendant's motion for fees and costs is **DENIED**.

BACKGROUND

Plaintiff Ashley Goodwin filed this action on January 22, 2018 alleging that Defendant Huhtamaki, Inc. violated the Fair Labor Standards Act ("FLSA") and the Kentucky Wages and Hours Act ("KWHA") by deducting meal periods from employees' pay and failing to pay overtime to employees who worked over forty hours per week. [DN 1 at 1–2.] Goodwin brought suit on behalf of herself and other similarly situated hourly employees of Huhtamaki. [*Id.* at 1.] On February 16, 2018, Huhtamaki moved to dismiss Goodwin's claims pursuant to

1

Rule 12(b)(6) of the Federal Rules of Civil Procedure. [DN 14.] In its motion to dismiss, Huhtamaki argued that "Ashley Goodwin was (and may still be) employed by Crown Services, which assigned her to shifts at the Huhtamaki facility, and Ms. Goodwin completed about a little over one week's worth of those shifts before she failed to appear." [DN 14-1 at 2.] Huhtamaki further asserted that,

> [o]f central importance to this litigation, a General Staffing Agreement (the "Agreement") defines the relationship between Huhtamaki and Crown Services conclusively. Pursuant to this Agreement, Crown Services maintains complete control over all of its employees. Specifically, Crown Service recruits, screens, hires, assigns, pays, withholds taxes, provides any benefits, and maintains employment records for its employees, like Ms. Goodwin. Relatedly, Huhtamaki explicitly excludes Crown Services employees from all of its benefits plans, policies, and practices and makes no offers or promises relating to compensation or benefits.

[*Id.* at 2.] Therefore, according to Huhtamaki, "[a]s a matter of law, Ms. Goodwin was never an employee of Huhtamaki or entitled to any compensation from Huhtamaki, so her claims fail." [*Id.* at 3.]

In lieu of filing a response to Huhtamaki's motion to dismiss for failure to state a claim, Goodwin's counsel filed a first amended complaint on March 9, 2018. [DN 15.] Goodwin's first amended complaint added Crown Services, Inc. as a party and asserted that Huhtamaki and Crown were "joint employers" of Goodwin and the putative class members within the meaning of 29 C.F.R. § 791.2. [*Id.* at 4, ¶ 3.5.] That section states, in part:

> (a) A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act of 1938, since there is nothing in the act which prevents an individual employed by one employer from also entering into an employment relationship with a different employer. A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case. If all the relevant facts establish that two or more employers are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee, who during the same workweek performs work for more

than one employer, each employer may disregard all work performed by the employee for the other employer (or employers) in determining his own responsibilities under the Act. On the other hand, if the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek.

29 C.F.R. § 791.2. Goodwin asserted that, as joint employers, "Huhtamaki and Crown's corporate pay policies and practices have (and continue to) blatantly violated the FLSA and Kentucky Statutes." [DN 15 at 6, ¶ 4.13.]

On March 23, 2018, Huhtamaki filed a second motion to dismiss for failure to state a claim and moved to recover its fees and costs. [DN 20.] Therein, Huhtamaki reiterated many of its previous arguments, such as the argument that Huhtamaki never employed Goodwin and therefore that her FLSA and KWHA claims fail as a matter of law and that "[t]he Court should also dismiss the lawsuit because Ms. Goodwin has not pled plausible claims for unpaid wages or overtime." [DN 20-1 at 5–10; 13–15.] Huhtamaki added a section to its second motion refuting Goodwin's new claim that Huhtamaki and Crown were joint employers and a section requesting its fees and costs "because Ms. Goodwin ignored documents attached by Huhtamaki to its first Motion to Dismiss and made bad-faith, baseless factual allegations in her First Amended Complaint." [*Id.* at 15–17.]

Three weeks later, on April 13, 2018, Goodwin voluntarily dismissed all of her claims against all Defendants. [DN 23.] Though the portion of Huhtamaki's motion seeking the dismissal of Goodwin's is now moot, it still wishes to pursue the portion seeking its attorney's fees and costs. Accordingly, Goodwin responded to that portion of Huhtamaki's motion on April 27, 2018, [DN 26], and Huhtamaki filed a reply on May 23, 2018. [DN 28.]

DISCUSSION

Huhtamaki argues that it is entitled to its fees and costs because "Ms. Goodwin needlessly and improperly complicated these proceedings by utterly ignoring documents filed by Huhtamaki to demonstrate her factual allegations have no merit and, in bad faith and with no basis, doubling down on the very same baseless allegations again in her First Amended Complaint." [DN 20-1 at 15.] Huhtamaki relies on two legal grounds in support of its argument.

First, "[a] court may assess attorney's fees under its inherent powers 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)), "or when the conduct is 'tantamount to bad faith,'" *id.* (quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 (1980)). Courts within the Sixth Circuit apply a three-prong test to determine whether sanctions are warranted due to bad faith. *Id.* To impose sanctions under this standard, the Court must find "[1] that 'the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment.'" *Id.* (quoting *BDT Prod., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010)). The Sixth Circuit has noted that this "test clearly contemplates a situation in which a plaintiff has filed a frivolous lawsuit." *Williamson v. Recovery Ltd. P'ship*, 826 F.3d 297, 302 (6th Cir. 2016).

Second, 28 U.S.C. § 1927 provides that:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Huhtamaki claims that it is entitled to fees and costs under both the Court's inherent authority to sanction and under § 1927. [DN 20-1 at 15.]

Huhtamaki argues that sanctions are warranted against Goodwin and her counsel because Goodwin

> makes allegations in her First Amended Complaint that directly contradict documents filed into the record already by Huhtamaki, including the following allegations:
>
> - Ms. Goodwin alleges that she worked through a 30-minute meal period, which was deducted from her pay anyway. See, e.g., DE #15 at 2, 5. Huhtamaki previously filed into the record the Crown Services orientation materials – signed by Ms. Goodwin – that confirm she, like all Crown Services employees, instead "receive[d] (5) 15 minute breaks during [her] 12 hour shift." See DE #14-5 at 1.
>
> - Ms. Goodwin alleges that Huhtamaki calculated and controlled her rate of pay. See, e.g., DE #15 at 2, 12. Huhtamaki previously filed not only the Agreement demonstrating that Crown Services, not Huhtamaki, calculated and controlled her compensation, see DE #14-2 at 1-2, but Huhtamaki also even filed the Crown Services payroll report for Ms. Goodwin that evidences same, see DE #14-5 at 3.
>
> - Ms. Goodwin even alleges that she worked for Huhtamaki from April 2017 to August 2017. See DE #15 at 5. Huhtamaki previously filed into the record the only two invoices ever received from Crown Services that reference Ms. Goodwin in any form or fashion, see DE #14-4, and they reflect that Ms. Goodwin was assigned a little over a week at Huhtamaki.

[*Id.* at 15–16.] In reliance on the above examples, Huhtamaki contends that "[t]he Court should conclude to make an award of reasonable fees and costs to Huhtamaki for being forced to defend against bad-faith, baseless allegations by Ms. Goodwin, where there is no question but that both she and her counsel were on notice of documented deficits in her allegations." [*Id.* at 16–17.]

In response, Goodwin argues, first, that the above-cited records on which Huhtamaki relies "are not irrefutable proof" that Goodwin's claims must fail and that,

> despite the documents that Huhtamaki attached to its initial Motion to Dismiss (ECF No. 14), and despite the diligent efforts of Plaintiff's counsel, Plaintiff's

> counsel was unable to consult with Plaintiff until after the filing of the Amended Complaint that Huhtamaki complains of. And when Plaintiffs' counsel finally reached Plaintiff, she explicitly disputed the documents provided by Huhtamaki and upon which Huhtamaki has based its Motion for Fees and Costs. Also, based on what she stated at the time, Plaintiff still had an arguable claim for unpaid overtime, just not the same one that counsel thought she had at the time of the filing of Plaintiff's Original and Amended Complaints. Regardless, Plaintiff's counsel recommended dismissal, Plaintiff promptly agreed, and Plaintiff promptly dismissed both Defendants, including Defendant Crown who had not even sought dismissal.

[DN 26 at 6.]

In its reply, Huhtamaki asserts that the

> position by Ms. Goodwin makes no sense because, given that there were both notice of and serious concerns about problems as of February 27, 2018, and counsel needed to speak with her, Ms. Goodwin had the obvious option of moving for an extension of time, rather than filing a whole new amended pleading that required further fees and costs to be expended by Huhtamaki. Based on Ms. Goodwin's Response, it is plain that her counsel took it upon themselves to file the First Amended Complaint **before they could speak with her** and **with notice of serious questions about allegations in the pleading requiring her explanation**. Put simply, counsel jumped the gun at the expense of Huhtamaki when they should have simply asked for extra time . . . Instead, Ms. Goodwin and her counsel sat back and let Huhtamaki unnecessarily expend additional fees and costs on utterly meritless claims.

[DN 29 at 3 (internal citations omitted).]

While Huhtamaki may be correct that the easier option would have been to move for an extension of time until Goodwin's counsel could confer with her, instead of filing an amended complaint, the Court does not find that her counsel's failure to do so warrants sanctions under either its inherent power or under § 1927.

**1) The Inherent Power to Sanction**

First, with regard to the Court's inherent power to sanction bad faith conduct, Huhtamaki has not persuaded the Court that the three-prong test for sanctions is satisfied here. Even if Huhtamaki is correct that Goodwin's claims were meritless under the first prong, it has not

persuaded the Court that Goodwin's counsel knew or should have known this or that the motive for filing the suit was an improper purpose, as the second and third prongs require. *See Metz*, 655 F.3d at 489.

Goodwin's counsel, A. Cliff Gordon, averred in an affidavit attached to Goodwin's response that he was unable to contact Goodwin following the filing of Huhtamaki's first motion to dismiss to discuss Huhtamaki's arguments and documents with her. [DN 26-1 at 1 (Gordon Affidavit).] However, the firm's records indicated that, contrary to the document Huhtamaki attached to its initial motion, Goodwin "had worked 36-48 hours per week for Huhtamaki from April 2017 to August 2017." [*Id.*] Additionally, "[b]ecause Huhtamaki's Motion to Dismiss indicated that Huhtamaki had hired Ms. Goodwin from a staffing company---Crown Services, Inc. ("Crown")---and because staffing companies frequently qualify as joint employers under the FLSA, the decision was made to amend the complaint to add Crown as a joint employer." [*Id.* at 1–2.] The Court finds this explanation to be reasonable and therefore does not find that Gordon knew or should have known that Goodwin's claims were meritless prior to filing her amended complaint. Rather, Gordon's affidavit indicates that he had a good faith belief that amending Goodwin's complaint would strengthen her claims and advance her case.

Huhtamaki also has not shown that Goodwin or her counsel filed the lawsuit for an improper purpose, such as harassment. *See Metz*, 655 F.3d at 489. The Sixth Circuit has emphasized that "the 'mere fact that an action is without merit does not amount to bad faith.'" *BDT Prod.*, 602 F.3d at 753 (quoting *Miracle Mile Assocs. v. City of Rochester,* 617 F.2d 18, 21 (2d Cir. 1980)). Accordingly, "in order for a court to find bad faith sufficient for imposing sanctions under its inherent powers, the court must find *something more* than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *Id.* Examples of

"something more" conduct include "a finding that the party had filed the suit 'for purposes of harassment or delay, or for other improper reasons,' *id.* at 754 (quoting *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313–14 (6th Cir. 1997)), or "a party's improper use of the courts . . . demonstrated by the fact that the plaintiff 'file[d] a meritless lawsuit **and** [withheld] material evidence in support of a claim.'" *Id.* (quoting *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 523 n.18 (6th Cir. 2002)). Additionally, "[h]arassing the opposing party, delaying or disrupting litigation, hampering the enforcement of a court order, or making improper use of the courts are all examples of the sorts of conduct that will support a finding of bad faith or improper purpose." *Id.*

Huhtamaki has not demonstrated that any of the above examples of improper purpose exist in this case. The Court has no reason to think that Goodwin or her counsel filed this lawsuit or Goodwin's amended complaint for the purpose of harassing Huhtamaki, nor is there any evidence that Goodwin withheld evidence, disrupted litigation, or ignored court orders. Accordingly, the Court does not find that Goodwin or her counsel have "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Metz*, 655 F.3d at 489, and therefore will not impose sanctions pursuant to its inherent power to do so.

**2) Sanctions Under 28 U.S.C. § 1927**

Second, the Court does not find that sanctions are warranted under 28 U.S.C. § 1927. Importantly, "simple inadvertence or negligence that frustrates the trial judge will not support a sanction under section 1927." *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987). Rather, "[t]here must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing

8

party." *Id.* "Under this formulation, the mere finding that an attorney failed to undertake a reasonable inquiry into the basis for a claim does not automatically imply that the proceedings were intentionally or unreasonably multiplied. *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997) (citing *Orlett v. Cincinnati Microwave, Inc.,* 954 F.2d 414, 419 (6th Cir. 1992)). "However, unlike sanctions imposed under a court's inherent authority, § 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006) (citing *In Re Rubin,* 825 F.2d at 984; *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986)). Nonetheless, to be liable for costs under § 1927, it must be that "an attorney . . . [ ] intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." *Id.* (citing *United States v. Wallace,* 964 F.2d 1214, 1220 (D.C. Cir. 1992)).

The Court finds that sanctions under § 1927 are improper for largely the same reasons as the Court explained above in declining to sanction under its inherent authority. Specifically, Huhtamaki has not persuaded the Court that Goodwin's counsel intentionally abused the judicial process or acted recklessly in multiplying judicial proceedings. *See id.* In *Red Carpet Studios*, for example, the Sixth Circuit affirmed the imposition of § 1927 sanctions when the attorney "continu[ally] attempt[ed] to circumvent the district court's injunction," "fail[ed] to join a necessary party and [made] several attendant misrepresentations as to the true nature of the transfer of the copyrights," sent multiple "vexatious and harassing" cease and desist letters, and "refus[ed] to expedite the deposition of" a witness which increased costs of litigation. *Id.* at 646–47. None of these circumstances, or circumstances analogous to these, are present in this case. Accordingly, sanctions under § 1927 are not warranted.

In sum, Goodwin dismissed her claims when this matter was still in its early stages. No discovery has been conducted, and though Huhtamaki expended some additional time and expense in filing its second motion to dismiss, the Court notes that, in many respects, Huhtamaki's second motion is identical to its first. To be sure, Huhtamaki added two sections to its memorandum in support of its second motion to dismiss which are captioned "Huhtamaki has never been a joint employer of Ms. Goodwin, so that theory does not alter the correct result that her FLSA and KWHA claims against Huhtamaki must be dismissed," [DN 20-1 at 10], which spans pages 10 to 13 of Huhtamaki's memorandum, and "Huhtamaki should be awarded fees and costs because Ms. Goodwin ignored documents attached by Huhtamaki to its first Motion to Dismiss and made bad-faith, baseless factual allegations in her First Amended Complaint," [DN 20-1 at 15], which spans pages 15 to 17 of Huhtamaki's memorandum. Otherwise, Huhtamaki's second motion is substantially similar to its first motion. [*See* DN 14-1; DN 20-1.] Overall, the Court does not find this additional time and expense to be especially onerous.

Most importantly, however, the Court does not find that Goodwin or her counsel acted in bad faith or with an improper purpose in filing this lawsuit or Goodwin's first amended complaint. *See Metz*, 655 F.3d at 489; *BDT Prod*, 602 F.3d at 753. Nor does it find "that counsel's behavior was so vexatious or egregious as to exceed negligence or incompetence" as is required to impose sanctions under § 1927. *ProCraft Cabinetry, Inc. v. Sweet Home Kitchen & Bath, Inc.*, No. 3:17-CV-01392, 2018 WL 928199, at *1 (M.D. Tenn. Feb. 16, 2018) (citing *Red Carpet*, 465 F.3d at 646–47).

## CONCLUSION

For the reasons explained in detail above, Defendant Huhtamaki Inc.'s motion to dismiss and for fees and costs, [DN 20], is **DENIED**. Further, given that Plaintiff Ashley Goodwin has

voluntarily dismissed all of her claims against all Defendants in this action, [DN 23 (Notice of Voluntary Dismissal)], **IT IS HEREBY ORDERED** that all claims in the above-captioned action shall be **DISMISSED WITHOUT PREJUDICE**, and the Clerk is directed to close the case.

There being no just cause for delay, this is a final and appealable order.

Date: June 21, 2018

cc: Counsel

**Thomas B. Russell, Senior Judge**
**United States District Court**